## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BRADY CENTER TO PREVENT GUN
VIOLENCE,
840 First ST NE, Suite 400,
Washington, DC 20002,

*Plaintiff,*

vs.

BUREAU OF ALCOHOL, TOBACCO, AND
FIREARMS
99 New York Ave NE
Washington, DC 20002

U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington, DC 20530

*Defendants.*

Case No. 26-cv-1980

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Brady Center to Prevent Gun Violence ("Brady") brings this action against

Defendants the Bureau of Alcohol, Tobacco, and Firearms ("ATF") and its parent U.S. Department

of Justice ("DOJ") to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552

("FOIA"). Plaintiff alleges as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and

28 U.S.C. § 1331.

2.      Venue is proper under 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B), as

Defendants' headquarters are located in Washington, D.C., within this district, a substantial part

of the events or omissions giving rise to Plaintiff's claims occurred here, and this is an action under FOIA.

## Parties

3. Plaintiff Brady is a not-for-profit organization incorporated under the laws of the District of Columbia and based in Washington, D.C. Plaintiff works to address the nation's epidemic of gun violence through engagement with officials at all levels of government, litigation, research, and engagement with the public through campaigns and information dissemination.

4. ATF is a component of DOJ, and an agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and is headquartered in Washington, D.C. ATF has possession, custody, and control of records to which Plaintiff seeks access.

5. DOJ is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and is headquartered in Washington, D.C. Through its component ATF and DOJ's administration of the Departmentwide FOIA appeals process, DOJ has possession, custody, and control of records to which Plaintiff seeks access.

## Brady's FOIA Request and Appeal

6. On February 6, 2026, Brady sent ATF a FOIA request seeking:

[A]ll Demand Letter 2s ("DL2s") issued by ATF to federal firearms licensees (FFLs) to date in Fiscal Years 2017, 2019, 2020, 2021, and 2025.

Exhibit 1.

7. ATF sends Demand Letter 2s, or "DL2s", to federally licensed firearms dealers, or "FFLs," and pawnbrokers that sold 25 or more guns that were recovered by law enforcement in the preceding calendar year after having been associated with crimes within three years of their sale (so-called "crime guns"). These three-page letters simply inform the recipient FFL that they met this threshold and are enrolled in the Demand Letter 2 Program ("Program") and outline the

resulting requirement on the FFL to report certain additional information that assists ATF in tracing firearms.

8.      During the first Trump Administration, ATF loosened the criteria for the Program, because the previous threshold for sending DL2s to gun dealers was 10 such crime guns recovered in the prior calendar year.

9.      According to Plaintiff's research, only about 2 percent of licensed gun dealers and pawnbrokers are in the Program. These FFLs have transferred the largest quantities of crime guns with a short time-to-crime (the elapsed time from retail sale to recovery by law enforcement) of three years or less. A time-to-crime of three years or less is a well-established indicator of potential firearms trafficking.

10.     FFLs that receive DL2s are required to quarterly report to ATF basic information about guns acquired from unlicensed sources (e.g. acquired from non-FFLs), which are often used firearms. It is generally difficult for ATF to trace such firearms because the paper trail often ends after the first retail sale. By requiring the top 2 percent of dealers and pawnbrokers that have transferred the largest quantities of short time-to-crime guns to affirmatively report such information, however, ATF greatly increases its ability to efficiently trace such crime guns. Indeed, ATF has traced over 190,000 crime guns using the information reported by dealers through the Program between 2000 and 2021, and since 2013 ATF has traced over 10,000 guns annually using DL2 data.[1] Moreover, as shown by DL2s previously produced under FOIA, the information

---

[1] *See* U.S. Dep't of Just., Bureau of Alcohol, Tobacco, Firearms, and Explosives, *National Firearms Commerce and Trafficking Assessment (NFCTA): Crime Guns – Volume II, Part II: National Tracing Center Overview 9* (Jan. 11, 2023), https://www.atf.gov/firearms/docs/report/nfcta-volume-ii-part-ii-ntc-overview/*download* [https://perma.cc/YMB6-YXY4].

received from DL2 dealers cuts the time it takes to complete traces "and provide the information to law enforcement by almost 50%."[2]

11.    On multiple prior occasions, Brady requested under FOIA the DL2s sent to FFLs from ATF, and ATF had previously responded by producing those letters with almost no information redacted nor pages withheld.

12.    Brady's request letter explained, in detail, the public interest in disclosure of the records sought by its request. Ex. 1.

13.    As Brady explained, the requested records would shed important light on ATF's administration of the DL2 program, including whether and to what extent the agency was effectively operating an important program for conducting oversight of FFLs and reducing gun crime. *Id*.

14.    Specifically, Brady explained that production of the requested letters would shed important light on:

> what actions the agency has taken to (1) administer this program, (2) seek additional information from these businesses to support critical crime gun tracing functions, and (3) conduct inspections and general oversight of this small percentage of FFLs that transfer the largest quantities of firearms diverted from the legal marketplace to the illicit one.

> *Id*.

15.    Brady's request further explained that the public interest in disclosure was heightened because the first Trump Administration had weakened the parameters of the DL2 program, and now there were serious questions about whether the Trump-Vance Administration would continue the program at all. *Id*.

---

[2] *See* Chief, National Tracing Division, ATF, Letter to BJam Incorporated (Aug. 31, 2017), https://bradyunited.box.com/s/wz88ytsmgelnox34w1oqz88lcb3k8g4c [https://perma.cc/Q9XZ-SDDC].

16. The request also explained that disclosure of both the volume of gun dealers receiving DL2s and those businesses' identities over time would shed important light on the effectiveness or ineffectiveness of ATF's policies and efforts to promote gun safety. *Id*.

17. By letter dated February 23, 2026, ATF responded to Brady's request (which it numbered 2026-00782), withholding the requested letters in full under FOIA Exemptions 4, 6, and 7(C). Ex. 2. ATF also asserted that it had considered the foreseeable harm standard. *Id*.

18. ATF's response largely summarized the basic scope of those Exemptions without explaining how they applied to the requested letters or what the foreseeable harm was in disclosure of the letters. *Id*.

19. On March 9, 2026, Brady administratively appealed ATF's determination to DOJ. Ex. 3. Among other things, Brady argued that ATF failed to provide an adequate administrative determination to support its withholdings, that the requested records do not contain exempt commercial information, that the relevant businesses do not have personal privacy interests protected by Exemption 6 and 7(C), and that even if those businesses had cognizable privacy interests the public interest in disclosure would outweigh them. *Id*.

20. DOJ provided confirmation of the administrative appeal and assigned it appeal number A-2026-00866.

21. DOJ has not responded to Brady's administrative appeal substantively.

*Exhaustion of Administrative Remedies*

22. As of the date of the Complaint, Defendants have failed to notify Brady of determinations regarding its appeal. Through Defendants' failure to respond within the time limits required by law, Brady has constructively exhausted administrative remedies.

**CLAIM FOR RELIEF**
**Count 1 (Violation of FOIA, 5 U.S.C. § 552)**

23.    Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

24.    By failing to respond to Plaintiff's administrative appeal within the statutorily mandated time period, and by withholding and failing to produce non-exempt records, Defendants have violated their duties under 5 U.S.C.§ 552, including but not limited to, their duties to conduct a reasonable search for responsive records, to take reasonable steps to release all non-exempt information, and to not withhold responsive records.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

1.    Order Defendants to conduct adequate searches for any and all responsive records to Plaintiff's FOIA request using search methods reasonably calculated to lead to discovery of all responsive records;

2.    Order Defendants to produce, by a date certain, any and all non-exempt responsive records;

3.    Enjoin Defendants from continuing to withhold any and all non-exempt responsive records;

4.    Award Plaintiff its costs, attorneys' fees, and other disbursements for this action; and

5.    Grant any other relief this Court deems appropriate.

6

Dated: June 4, 2026                          Respectfully submitted,

/s/ *Douglas N. Letter*                       /s/ *Daniel A. McGrath*
Douglas N. Letter
(Bar No. 253492)                             Daniel A. McGrath
Joshua B. Scharff                            (Bar No. 1531723)
(Bar No. 999392)                             Amy Vickery*
Tess M. Fardon                               (NY Bar No. 5942271)
(Bar No. 1618267)                            *pro hac vice* forthcoming
Brady Center to Prevent Gun Violence         Ronald A. Fein
840 First Street NE, Suite 400               (Bar No. 90026641)
Washington, D.C. 20002                       Democracy Forward Foundation
(202) 370-8160                               P.O. Box 34553
                                             Washington, D.C. 20043
                                             (202) 448-9090
dletter@bradyunited.org                      dmcgrath@democracyforward.org
jscharff@bradyunited.org                     rfein@democracyforward.org
tfardon@bradyunited.org                      avickery@democracyforward.org


                                              **Pro Hac Vice* Forthcoming

7

# Exhibit 1



**Via Portal**                                                                                                          February 6, 2026

Bureau of Alcohol, Tobacco, Firearms and Explosives
ATTN: Disclosure Division
99 New York Avenue, NE
Washington, D.C. 20226
Via Portal

**Re:     FREEDOM OF INFORMATION ACT REQUEST PERTAINING TO DEMAND
LETTER 2 DOCUMENTS ISSUED TO FFLS IN CERTAIN YEARS.**

Dear Sir or Madam:

Brady hereby requests the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) produce records pursuant to the provisions of the Freedom of Information Act (FOIA) 5 U.S.C. § 552 *et seq*.

**Specifically, Brady requests all Demand Letter 2s ("DL2s") issued by ATF to federal firearms licensees (FFLs) to date in Fiscal Years 2017, 2019, 2020, 2021, and 2025.**

Brady seeks this information of substantial public interest in order to shed light on vital government activities and to disseminate information of significant public value. ATF enrolls in this program licensed firearm dealers and pawnbrokers who transferred 25 or more crime guns recovered by law enforcement with a time to crime of three years or less in the preceding calendar year. The letters that Brady seeks here will show what actions the agency has taken to (1) administer this program, (2) seek additional information from these businesses to support critical crime gun tracing functions, and (3) conduct inspections and general oversight of this small percentage of FFLs that transfer the largest quantities of firearms diverted from the legal marketplace to the illicit one.  In the first Trump Administration, this program's data collection parameters were weakened. Now there are serious questions about whether the Administration continues to send DL2s and collect additional information at all. Taking this basic step to collect additional information from businesses selling substantial numbers of guns that end up being used in crime is a vital part of effective enforcement efforts, and the public has the right to know if its government has further weakened its gun safety policies. Additionally, there is substantial public interest in understanding which enterprises are selling the most crime guns and consequently contributing to our nation's epidemic of gun violence. By combining this DL2 information with ATF inspection reports - as Brady has done so on www.gunstoretransparency.org - the public is able to gauge the effectiveness of ATF's industry

**BRADY | 840 First ST, NE, Suite 400 | Washington, DC 20002 | 202.370.8100
www.bradyunited.org**

oversight functions. The volume of gun dealers in the Demand Letter 2 program and their identities (including if they remain the same over time) can also shed valuable light on the effectiveness or ineffectiveness of the government's gun safety policies and efforts.

ATF has previously responded to similar requests, producing responsive letters with limited redactions. *See* requests 2023-00387 (all DL2s issued in FY 2022), 2023-01438 (all DL2s issued in FY 2023), 2024-01606 (all DL2s issued in FY 2024), 2024-00052 (DL2s issued to a specific Georgia FFL), and 2023-00258 (DLs issued to a specific Minnesota FFL). Brady and news outlets have published reports and articles on the information in these records and Brady has worked to widely disseminate the information therein.[1]

FORMAT AND PRODUCTION REQUESTS

The term "document" shall mean all of the following, without limitation and by way of description: (a) all printed materials of every kind whatsoever; (b) all handwritten materials of every kind whatsoever; (c) all materials in electronic media regardless of the forms of such media, including emails; (d) all drafts of subject documents; (e) all documents referenced in subject documents, including those noted as exhibits and attachments, as well as those referenced in the bodies of subject documents or in footnotes to subject documents; (f) all documents, otherwise identified, but containing marginal or other annotations, handwritten or otherwise; (g) all documents in the form of transcripts of meetings and telephone conversations and memoranda of such meetings and telephone conversations, whether printed or handwritten; (h) to the extent not covered by the definitions in (a)-(g), all materials generated by or received by any government employee, consultant or other person having any relationship to the government; (i) to the extent not covered by the definitions in (a)-(h), all materials generated by any person not in the employ of the government, including but not limited to lawyers, foreign government officials of every level, other interested parties and non-parties to any communications on any relevant subject.

FOIA regulations provide that, if some parts of records containing the requested information are exempt from mandatory disclosure, then the non-exempt material shall be disclosed after the exempt material has been deleted. *See* U.S.C. § 522(b); 28 C.P.R. § 16.6. Accordingly, if you determine that some portion of a record that is otherwise responsive to this request is exempt, please provide a copy of all reasonably segregable, non-exempt portions of the record. If the requested records are not in the possession of the ATF or its agents, we request that ATF identify all federal agencies and/or other individuals and entities believed to possess such documents.

---

[1] *See, e.g.* https://www.bradyunited.org/resources/research/suppliers-americas-gun-violence-epidemic; https://www.nbcnews.com/nightly-news/video/federal-data-reveals-gun-stores-whose-firearms-have-been-used-in-many-crimes-204824133525; https://www.nytimes.com/2023/08/25/us/politics/gun-control-atf-clyde-congress.html?partner=slack&smid=sl-share; https://www.usatoday.com/story/news/investigations/2024/02/15/shops-selling-most-crime-guns-revealed-atf/72581120007/.

We further request that, pursuant to 5 U.S.C. § 522(a)(3)(B), ATF produce responsive documents in the native electronic format in which the document was created. To the extent that ATF is unable to produce the responsive documents in the requested format, we request confirmation that the record does not exist in native format and production of the documents in the following format, listed in order of our preference: (1) PDF format; or (2) paper copy.

**We request that ATF produce these documents within twenty (20) working days as required by FOIA.** Additionally, in accordance with Section 7 of the OPEN Government Act of 2007, Pub. L. No. 110-175, and pursuant to Attorney General Holder's FOIA Memorandum of March 19, 2009, we request that ATF provide the individualized tracking number associated with this request should the request take longer than 10 days to process.

FEE WAIVER REQUEST

This request qualifies for a fee waiver because the requested information will be used for a public interest purpose and not for commercial purposes. The Brady Center is a 501(c)(3) nonprofit with the mission to reduce gun violence in America. To advance this mission, Brady uses open records requests to ensure the accountability of the government, to inform evidence-based solutions to reduce gun violence, and to educate the public. Brady makes critical information gathered available to the public website through reports and press releases and our public website, and we often work with the news media to generate articles based on received records. ATF has previously granted Brady (previously known as the Center to Prevent Handgun Violence) a fee waiver in similar circumstances. *See Center to Prevent Handgun Violence v. United States Department of Treasury*, 49 F.Supp.2d 3, 5 (D.D.C. 1999) (acknowledging the ATF's past grant of a fee waiver to Brady for a similar request of ATF records). Similarly, here, Brady asks that the ATF produce the information requested and grant a full public interest fee waiver.

We appreciate your prompt consideration of this request. If you have any questions, or if we can be of any assistance in expediting this request, please contact us at jscharff@bradyunited.org.

Sincerely,

Josh Scharff
General Counsel & Sr. Director, Programs
Brady

**BRADY | 840 First ST, NE, Suite 400 | Washington, DC 20002 | 202.370.8100**
**www.bradyunited.org**

# Exhibit 2



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

www.atf.gov

February 23, 2026                                    FOIA Request No: 2026-00782

Mr. Joshua Benjamin Scharff
Senior Regional Director
Brady United
840 First Street, NE
Suite 400
Washington, DC  20002

Dear Mr. Scharff:

This letter is the final response of the Bureau of Alcohol, Tobacco, Firearms and Explosives
(ATF) to your Freedom of Information Act (FOIA)/Privacy Act (PA) request for records
concerning all Demand Letter 2s ("DL2s") issued to federal firearms licensees to date in Fiscal
Years 2017, 2019, 2020, 2021, and in 2025.  This Office received your request on February 6,
2026.

The documents are being withheld in full.

- 5 U.S.C. § 552(b)(4). This provision concerns trade secrets and commercial or financial
information obtained from a person that is privileged or confidential. Please be advised that we
considered the foreseeable harm standard when reviewing records and applying FOIA
exemptions.

- 5 U.S.C. § 552(b)(6) of the FOIA. This provision concerns material the release of which would
constitute a clearly unwarranted invasion of the personal privacy of third parties.

 - 5 U.S.C. § 552(b)(7)(C). This provision concerns records or information compiled for law
enforcement purposes the release of which could reasonably be expected to constitute an
unwarranted invasion of the personal privacy of third parties.

For your information, Congress excluded three discrete categories of law enforcement and
national security records from the requirements of the FOIA.  *See* 5 U.S.C. § 552(c).  This
response is limited to those records that are subject to the requirements of the FOIA.  This is a

standard notification that we give to all our requesters.  You should not take it as an indication that excluded records do, or do not, exist.

If you have any questions, you may contact the analyst processing your request, using the Public Access Link (PAL) correspondence feature.  In addition, you may contact our FOIA Public Liaisons, Lynette Carter and Jasmine Bryant, at 202-648-7390 for any further assistance and to discuss any aspect of your request.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://doj-foia.entellitrak.com/etk-doj-foia-prod/login.request.do.  Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Hirsh D. Kravitz
Chief
Information and Privacy Governance Division

# Exhibit 3



**Via FOIA STAR Portal**                                    March 9, 2026

Director,
Office of Information Policy ("OIP"),
United States Department of Justice,
441 G Street, NW, 6th Floor,
Washington, D.C. 20530,

**Re:        APPEAL OF ATF FREEDOM OF INFORMATION ACT RESPONSE 2026-00782.**

Dear Director:

The Brady Center to Prevent Gun Violence ("Brady") appeals the Bureau of Alcohol, Tobacco, and Firearms ("ATF") response to its Freedom of Information Act ("FOIA") request numbered 2026-00782.

## Summary

ATF withheld in full Demand Letter 2s ("DL2s") sent to federal firearms licensees ("FFLs") in recent fiscal years under Exemption 4, 6, and 7(c). But DL2s do not contain confidential commercial information or implicate cognizable significant privacy interests, and their disclosure serves a substantial public interest. Consequently, Brady believes these records should be fully releasable. Indeed, ATF has previously released such letters in full or with minimal redaction on multiple occasions to both Brady and other requesters. Brady requests that OIP require ATF to reverse course and release the requested DL2s in full.

## Background

*ATF Has Previously Released DL2s Under FOIA*

ATF has previously responded to FOIA requests for DL2s by releasing them with no or few redactions.  This includes responses to requests for particular DL2 letters, as well to requests for all DL2s sent in a particular fiscal year. *See* ATF Requests 2023-00387 (all DL2s issued in FY 2022), 2023-01438 (all DL2s issued in FY 2023), 2024-01606 (all DL2s issued in FY 2024), 2024-00052 (DL2s issued to a specific Georgia FFL), and 2023-00258 (DLs issued to a specific Minnesota FFL).

**BRADY | 840 First ST, NE, Suite 400 | Washington, DC 20002 | 202.370.8100**
**www.bradyunited.org**

*Brady's Request 2026-00782*

On February 6, 2026, Brady requested the following DL2 records:

**all Demand Letter 2s ("DL2s") issued by ATF to federal firearms licensees (FFLs) to date in Fiscal Years 2017, 2019, 2020, 2021, and 2025.**

Ex. 1.

Brady's request explained the public interest in disclosure of the requested records in detail, noting that the requested letters would shed light on ATF's administration of an important program seeking data from businesses (licensed firearms dealers and pawnbrokers) whose guns were recovered by law enforcement at certain volumes and allow scrutiny of ATF's approach to inspections and oversight of businesses that sold the largest quantities of recovered crime guns with a short time-to-crime (a well-established trafficking indicator). Brady further explained that there are serious concerns that ATF may weaken or dismantle this program, and that the records sought would allow for scrutiny of the effectiveness of ATF's oversight and efforts to reduce gun crime. The status of the DL2 program was a topic of concern raised during the current ATF Deputy Director's, and current ATF Director nominee's, recent confirmation proceedings, and the continued operation of the program remains uncertain and in doubt. Brady cited relevant news articles and dissemination efforts to further support its explanation of the public interest in disclosure of the requested records. See Ex. 1.

*ATF's Response*

On February 23, 2026, ATF responded to Brady's request writing that the requested DL2s were "withheld in full." Ex. 2. ATF cited FOIA Exemptions 4, 6, and 7(c) to justify its full withholding of the requested records. *Id*. ATF's citation to these exemptions provided only broad descriptions of their purpose and did not explain the application of those exemptions to the requested records or why there was a foreseeable harm from disclosure:

> - 5 U.S.C. § 552(b)(4). This provision concerns trade secrets and commercial or financial information obtained from a person that is privileged or confidential. Please be advised that we considered the foreseeable harm standard when reviewing records and applying FOIA exemptions.
> - 5 U.S.C. § 552(b)(6) of the FOIA. This provision concerns material the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties.
> - 5 U.S.C. § 552(b)(7)(C). This provision concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties.

Ex. 2.

ATF's response provided no other information to justify or explain its withholding of the requested DL2s.

**Basis for Appeal**

1. *ATF Failed to Issue An Adequate Administrative Determination*

As an initial matter, ATF's bare citation to three FOIA exemptions and the foreseeable harm standard without any description of how those exemptions purportedly apply to the requested DL2s is an inadequate administrative determination that hinders Brady's ability to fulsomely appeal the agency's bases for withholding these records.

2. *DL2s Do Not Contain "Trade Secrets" or "Confidential or Privileged" Commercial Information Subject to Exemption 4*

DL2s are letters from ATF, a federal agency, to particular businesses (FFLs). The letters are sent to seek additional data in light of particular indications that those businesses sold short time-to-crime guns that were recovered by law enforcement in higher than typical quantities. These letters do not contain data from these businesses, and they certainly do not contain confidential commercial information obtained from businesses. Exemption 4 plainly does not shield these records from disclosure.

For Exemption 4 to apply, information must either be a "trade secret" or information that is "commercial or financial," obtained from a person, and "privileged or confidential." 5 U.S.C 552(b)(4). The D.C. Circuit has held that protected "trade secrets" must meet the narrow definition of being "a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort." *Public Citizen Health Research Group v. FDA*, 704 F.2d 1280 (D.C. Cir. 1983).

To be protected "commercial" information, information must "serve[] a 'commercial function' or [be] of a 'commercial nature.'" *Citizens for Resp. & Ethics in Wash. v. DOJ*, 58 F.4th 1255, 1267 (D.C. Cir. 2023) (contractors' identities were not "commercial" information solely because their disclosure could have commercial consequences). Letters sent *by* a federal agency to a business seeking additional data like the DL2s requested here cannot reasonably be considered "commercial" in nature. To the extent they reveal information about the businesses that receive the letters, they reveal only that the businesses sold more than a threshold number of firearms that were subsequently recovered by law enforcement without actually identifying that number. This information, discernible from implication from the agency's action, is scarcely "commercial" in nature.

Further, for even "commercial" information to be withheld under Exemption 4, it must be "privileged or confidential." In *Food Marketing Institute v. Argus Leader Media*, the Supreme Court held that for information to be "confidential" it must at least be information that is "customarily kept private, or at least closely held, by the person imparting it." 588 U.S.

427443-445 (2019). The DL2s here do not directly disclose *any* information from FFLs. The only information provided by FFLs that would be indirectly revealed by the DL2s is the fact that the recipients had sold firearms. That is plainly not confidential information for a firearms dealer.

3. *FFLs and Pawnbrokers Are Businesses Whose Identities Do Not Constitute Personal Privacy Interests Protected by Exemptions 6 and 7(c)*

DL2s are letters to FFLs who are, nearly exclusively, businesses. Recipients of DL2s are either type 1 or type 2 FFLs, who by definition are "engage[d" in the business of . . . dealing in firearms" per 18 U.S.C. § 923(a). Exemption 6 and 7(C) protect only "personal" privacy interests. The Supreme Court has explicitly held that businesses do not have protectable personal privacy interests. *FCC v. AT&T, Inc*., 562 U.S. 397 (2011). As a threshold matter, neither of these exemptions can apply at all to the purported privacy interests of FFLs.

Further, to the extent courts have recognized a limited exception to this general rule to allow the recognition of protectable privacy interests for closely held businesses, such privacy interests are only cognizable when the requested information would disclose an owner's personal financial information. *See Consumers' Checkbook Ctr. for the Study of Servs. v. HHS*, 554 F.3d 1046, 1051 (D.C. Cir. 2009). The disclosure of a federal agency's letter to a firearms dealer requesting additional information in no way plausibly discloses that dealer's personal financial information.

4. *Even if FFLs Had Protectable Privacy Interests under Exemption 6 and 7(C), the Public Interest in Disclosure of the Requested Information Would Overcome Those Interests*

Exemption 6 and 7(C) require the weighing of any protectable privacy interest against the public interest in disclosure. The exemptions may be overcome when "the public interest sought to be advanced is a significant one" and that "the information is likely to advance that interest." *NARA v. Favish*, 541 U.S. 157, 172 (2004). Even if the FFLs receiving the DL2s at issue here had protectable personal privacy interests under Exemptions 6 and 7(C), the public interest in disclosure of these important records would outweigh those privacy interests.

As Brady explained in its request, disclosure of the DL2s would shed important public light on ATF's operation of the DL2 program amidst concerns that it is no longer operating and would allow for public scrutiny of ATF's use of its authority to conduct appropriate oversight and inspections of firearms dealers that have sold large numbers of crime guns recovered by law enforcement with a short time-to-crime. The disclosure of these records would also shed light more broadly on the number of FFLs selling large quantities of crime guns within a short period over a span of different years, which sheds important light on the general efficacy of ATF's oversight and enforcement efforts over that period. In all these ways, the requested records would inform the public about crucial, specific efforts related to an issue of life-and-death. By contrast, even if FFLs' privacy interests were cognizable, the disclosure of these letters would only show that a particular FFL was one among many that received a request for additional information in light of having passed a particular threshold in the number of firearms sold that

were subsequently recovered by law enforcement.  Whatever privacy interest might be implicated by such information is outweighed by the strong interest in disclosure here.


\*\*\*

We appreciate your prompt consideration of this appeal, and request that OIP require the release of the requested DL2 records. If you have any questions, or if we can be of any assistance in expediting this request, please contact us at jscharff@bradyunited.org.


Sincerely,

Josh Scharff
General Counsel & Sr. Director, Programs
Brady